## United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7162 | **DATE** | 7/21/2000 |
| **CASE TITLE** | Melvyn J. Feldman vs. The Equitable Life etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. We earlier deferred ruling on defendant's counterclaim, pending briefing by the parties. We now enter judgment on the counterclaim for plaintiff/counter-defendant and against defendant/counter/plaintiff(Equitable). Status hearing set for August 16, 2000 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 24 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 84 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | WAH | courtroom deputy's initials | 00 JUL 21 AM 10:47 | date mailed notice |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MELVYN J. FELDMAN, )
)
    Plaintiff/ )
    Counter-Defendant, )
)
vs. ) No. 98 C 7162
)
THE EQUITABLE LIFE ASSURANCE )
SOCIETY OF THE UNITED STATES, )
)
    Defendant/ )
    Counter-Plaintiff. )

DOCKETED
JUL 2 4 2000

## MEMORANDUM OPINION AND ORDER

We earlier deferred ruling on defendant's counterclaim, pending briefing by the parties. We now enter judgment on the counterclaim for plaintiff/counter-defendant and against defendant/counter-plaintiff (Equitable).

The crux of Equitable's claim is that Feldman misrepresented his condition to Dr. Minieka and that the APS forms signed by Dr. Minieka were not valid. It contends that valid APS forms were a condition precedent to the payment of total disability benefits and that, accordingly, it should recover the amounts improperly paid. Feldman contends that Equitable's claim is based on fraud, not failure of a condition precedent, and fraud was not proved by clear and convincing evidence. And it was not proved, as this court previously remarked. The counterclaim certainly raised fraud claims, but the final pretrial order and Equitable's trial brief both lend some support to Equitable's present formulation of the issue. Even so, we conclude that the claim fails.

We have no doubt that Feldman believes in good faith that he is totally disabled. It is

84

undisputed that he suffers from peripheral neuropathy, and it is clear that he has trouble walking and lacks stamina. He has on occasion fallen and injured himself as a result of his condition. That does not mean, however, that he cannot briefly walk briskly on occasion. We do not conclude that Feldman misrepresented his own evaluation of his condition to Dr. Minieka, and the doctor, based on considerable information other than Feldman's own assessment, concluded that he was totally disabled. Those were valid APS forms, and the fact that Dr. Minieka later changed his mind (which Feldman reported to Equitable) because he saw Feldman walking briskly on one occasion does not change the fact that Feldman prior to that had provided what Equitable accepted as sufficient to support the payment of benefits.

This court's ruling of April 6, 2000, was adverse to plaintiff's total disability claim, but it raised the possibility of a wholly different claim: recovery of benefits for residual disability. Quite clearly, that claim was not tried in the trial of the total disability claim, Equitable did not consent to trial of such a claim, and we have no basis for conforming the pleadings so as to grant recovery on a claim that was not previously made. But it is undisputed that Feldman cannot perform the substantial and material duties of a life insurance salesman for as much time as is usually required to perform them. Equitable's own expert, Dr. Vatz, evaluated Feldman at one time as 70% disabled and at trial as 50% disabled. This court had jurisdiction over the claim that was tried and the case continued thereafter because of the counterclaim. We see, then, no reason why plaintiff cannot now file an amendment to the complains to raise the residual disability claim. We grant the motion to amend.

We do so because the amounts involved do not justify a new lawsuit somewhere else, and it is apparent that Equitable is not presently willing to grant any benefits. We recognize

that the claim raises a legal issue, as well as factual issues. The amount of the benefit is tied to the diminution in earnings, but that assumes the insured continues to work as much as he can. Feldman, we have already determined, did not do so. But does that mean that an insurance company can deny any benefits when the insured is at least 50% disabled (in terms of the time he can devote to his work) and chooses not to work? We have difficulty with such a concept.

If the residual disability claim has to be litigated, then obviously there has to be an opportunity for some additional discovery (although we think not much). We think, though, that the time has come for the parties to put aside their animosities, take a hard look at the economics and bring this matter to an end.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

July 28, 2000.